UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES SEAY and KIMBERLY SEAY, | ) ) ) | No. 17 CV 7047 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| MENARD, INC., | ) ) ) | October 1, 2018 |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

Plaintiffs Charles ("Charles") and Kimberly ("Kimberly") Seay brought this suit against Defendant Menard, Inc. after Charles sustained injuries while shopping at a Menard store. Charles asserts a claim for negligence and his wife asserts a claim for loss of consortium. Menard moves for summary judgment, arguing that the display base on which Charles tripped was an "open and obvious" condition for which Menard owed no duty of protection. For the following reasons, the motion is denied:[1]

---

[1] The court also denies Menard's motion to strike facts, (R. 52, Def.'s Reply at 1), set forth in Plaintiffs' summary judgment response, (R. 46, Pls.' Resp.). Menard argues that Plaintiffs' discussion of "new" facts from exhibits attached to Menard's Local Rule ("LR") 56.1 statement should have been included in Plaintiffs' "additional facts" section of their LR 56.1 statement. (R. 52 at 1-2). "[I]t is firmly within the district court's discretion to strike" a response to the movant's LR 56.1 statement. *Mingo v. Roadway Express, Inc.*, 135 F. Supp. 2d 884, 893 (N.D. Ill. 2001). However, the court declines to strike facts discussed by Plaintiffs in their response brief because they provided Menard adequate notice of such facts in their response and Menard was able to reply to these facts. (See R. 51, Def.'s LR 56.1 Reply).

**Background**[2]

On November 30, 2016, Charles sustained injuries when walking through an aisle at a Menard store in Evergreen Park, Illinois, and his "foot became caught on a display," causing him to fall. (R. 38, Def.'s LR 56.1 Statement ¶¶ 1, 8, 9, 11.) More specifically, Charles's "foot was caught on the elevated rubber trim surrounding a mat or rug which [assistant] store manager [Billy] Garrison describes as a 'promo flat'[.]" (R. 45, Pls.' LR 56.1 Resp. ¶¶ 11, 19, 25; see also R. 38, Ex. A(1), (4).) Menard's video footage of the incident depicts Charles's trip and fall. (R. 38 ¶¶ 14, 15, Ex. C.) Photographs taken by Kimberly after the incident show the nature and location of the trim on which Charles tripped. (Id., Ex. A(1), (4); R. 45 ¶¶ 55, 58.)

Menard asserts that Charles fell near an end cap in a main aisle, which is more than six feet wide and wide enough for two carts to pass each other "without either cart or person touching each other or the sides of the aisles." (R. 38 ¶¶ 20-23.) Plaintiffs dispute Menard's use of the term "end cap" and its characterization of the width of the aisle.[3] (R. 45 ¶¶ 12, 14, 20, 21.) Plaintiffs state that Charles

---

[2] The following facts are taken from the parties' LR 56.1 statements and responses, (R. 38, 45, 51), video footage from Menard surveillance cameras, (R. 38, Ex. C), and photographs taken by Kimberly, (id., Ex. A). Where the parties disagree about material facts, the court presents each side's position but views the facts in the light most favorable to the non-moving party. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The court includes only the parties' facts that are appropriately presented, supported, and relevant.

[3] According to Menard, Plaintiffs allege that "Menard placed and positioned the end cap display in the aisle such that it caused a tripping hazard and that Menard failed to keep its aisle clear of tripping hazards." (R. 38 ¶ 12.) Plaintiffs respond

"was moving from a wider aisle to the narrower aisle and the narrow aisle was occupied by a number of store patrons coming toward [them]."[4] (Id. ¶ 21.) "Instead of being able to move into the middle of the narrower aisle, Charles, seeing the other customers occupying the aisle, stepped in front of his wife to travel single file on the left side of the [narrower] aisle when he caught his foot on the raised rubber trim," according to Plaintiffs. (Id.) Charles had walked past the end cap during prior visits to the store.[5] (R. 38 ¶ 24.)

While walking on the left side of the aisle about 15 to 20 feet from the display, Charles saw the base of the display, including a two- or three-foot high box. (Id. ¶¶ 26-29.) Charles continued to walk in a straight line, looking where he was walking. (Id. ¶ 29.) He noticed an object at the base, which he assumed was flush with the floor. (Id. ¶ 30.) He also noticed that the base was a different color from

---

that their complaint does not use "end cap display," but rather "display," and that deposition testimony shows that "end cap display" is a term of art different from the "promo flat" by which Charles fell. (R. 45 ¶ 12; see also id. ¶¶ 14, 20, 24-25, 51.)

[4] Menard asserts that Plaintiffs did not "offer any evidence to dispute or disprove [Menard's] statement that the fall happened in a main aisle, which is over six feet wide and wider than other aisles," (R. 51 ¶ 20), or that the aisle was "wide enough for two carts to pass each other," (id. ¶ 21), but Plaintiffs cited the video footage of the incident, (R. 38, Ex. C), and other evidentiary support, (R. 45 ¶¶ 1, 20, 21). Unless otherwise noted, the court does not agree with Menard's general assertions that Plaintiffs did not cite appropriate evidence to support their responses. (See R. 51 ¶¶ 11, 12, 20, 25, 36-39, 42, 43, 47, 57.)

[5] While Plaintiffs dispute this fact, (R. 45 ¶ 24), they did not cite any evidence to support their position, as required by LR 56.1(b)(3)(B). Furthermore, Kimberly testified that Charles had walked past the end cap where the incident occurred during prior visits to Menard. (R. 51 ¶ 24 (citing R. 38, Ex. A at 34:9-11, 42:21-23).) Therefore, the fact is deemed admitted for summary judgment purposes.

the floor. (Id. ¶ 31; see also id. ¶ 34.) As Kimberly approached the display, she saw what she thought was a green and black tarp on the floor. (Id. ¶ 32.)

Menard asserts that because Charles saw the base 15 to 20 feet before he approached the display, "he was aware of where it was located before he fell." (Id. ¶ 36.) Nothing was "blocking" his vision, "distracting" his attention, or preventing him from looking down immediately before the fall, according to Menard. (Id. ¶¶ 37-40.) Menard contends that Charles "had some room to move to his right without contacting other customers," and if he had done so, "he would have avoided the base." (Id. ¶¶ 42, 43.) George Kemp was walking in the opposite direction of Charles, and Kemp moved over and behind his wife, to allow Charles to pass. (Id. ¶¶ 45-47.) The video footage shows approximately one foot between Charles's right hand and the side of Kemps' cart. (Id. ¶ 48, Ex. C.) Charles testified that the display base extended beyond the boxes, and that his left toe caught the black trim on the base, not the box. (Id. ¶¶ 49, 50, 54.)

Plaintiffs respond that Charles thought that the trim surrounding the carpet was flush with the floor, not elevated. (R. 45 ¶¶ 36, 40.)[6] Charles was not looking at the base immediately before he fell as he was looking ahead. (Id. ¶ 37.) While Plaintiffs agree that Charles was not distracted before he fell, they state that he was looking where he was walking, not staring downward. (Id. ¶¶ 38-40.) Plaintiffs disagree that Charles had room to move to his right without "contacting or crowding" other customers. (Id. ¶¶ 42-43.)

---

[6] The court denies Menard's request to strike Plaintiffs' responses as non-responsive. (R. 51 ¶¶ 21, 36-40, 42-44, 47, 58-60, 62-66.)

Menard asserts that the green carpet and black trim at the base were "obvious and easily visible." (R. 38 ¶ 59; see also id. ¶¶ 58, 62.) Menard also contends that the end cap display was out of the walkway, was not a tripping hazard because the green carpet and box signaled the presence of an object and was lined up flush with the aisles and end caps. (Id. ¶¶ 63-66.) Plaintiffs disagree, responding that the carpet and trim extended beyond the displayed boxes into the aisle, and the trim appeared to be flush with the floor when in fact it was raised above the floor. (R. 45 ¶ 58; see also R. 38, Ex. A(4).) Plaintiffs cite witness testimony from Kemp, his wife Rebecca Kemp, and Ashley Wilson stating their beliefs that the trim was hazardous insofar as it extended into the "walkway aisle."[7] (R. 45 ¶ 62; see also id. ¶¶ 63, 65, 66.) Wilson also expressed her belief that the trim height was dangerous and would have been safer if it had been flush with the floor. (Id. ¶ 62; see also id. ¶¶ 64, 66.)

Because of his fall, Charles fractured "the head of his right humerus (shoulder) and right patella (knee cap)." (R. 46 at 1.) Plaintiffs filed suit against Menard in the Circuit Court of Cook County, Illinois, and Menard removed the case to federal court. The parties then consented to this court's jurisdiction. (R. 10.)

---

[7] The court does not rely on lay opinions of Plaintiffs' witnesses or Menard employees in rendering its decision. The parties have not briefed or challenged the admissibility of lay opinion testimony pursuant to Federal Rule of Evidence 701. As such, the court merely cites the testimony here to show that lay people who purportedly observed the condition first-hand disagree as to the openness and obviousness of the condition and does not rule on the admissibility of such evidence at trial.

## Analysis

Summary judgment is appropriate when the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

Illinois law applies to this diversity action. *See Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012). For Charles to prevail on his negligence claim under Illinois law, he must show that Menard: (1) owed him a duty; (2) breached that duty; (3) his injury was proximately caused by such breach; and (4) he sustained damages as a result. *See Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018) (citing *Wilfong v. L.J. Dodd Constr.*, 930 N.E.2d 511, 519 (Ill. App. Ct. 2010)); *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016). Whether a

6

defendant owes a plaintiff a duty of care is a question of law. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13. In deciding whether a duty exists, the court must consider "'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.'" *Id.* ¶ 14 (quoting *Ward v. K Mart Corp.*, 554 N.E.3d 223, 226 (Ill. 1990)). "[T]he concept of duty in negligence cases is very involved, complex and indeed nebulous." *Dunn*, 880 F.3d at 906 (internal quotation omitted). Four factors guide this inquiry: "'(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against injury, and (4) the consequences of placing that burden on the defendant.'" *Id.* at 906 (quoting *Wilfong*, 930 N.E.2d at 519).

**A.     Duty of Care Factors One and Two**

Menard argues that it owed Charles no duty of care because it was not reasonably foreseeable that Charles would trip on the "open and obvious" display and become injured. (R. 39, Def.'s Mem. at 5-12.) Under the Restatement (Second) of Torts § 343 (1965), an injury is reasonably foreseeable if a landowner knows of an unreasonable risk of harm, knows that the invitee will not realize the harm, and does not exercise reasonable care in protecting the invitee from danger. *See Kleiber v. Freeport Farm & Fleet, Inc.*, 942 N.E.2d 640, 647 (Ill. App. Ct. 2010). This duty of care is negated, however, where a condition is open and obvious. *Bucheleres v. Chi. Park Dist.*, 665 N.E.2d 826, 832 (Ill. 1996). This is because "the law generally assumes that persons who encounter [open and obvious] conditions will take care to

7

avoid any danger inherent in such condition." *Id*. The open and obvious rule applies to the first two duty of care factors—reasonable foreseeability and likelihood of injury. *See Bruns*, 2014 IL 116998, ¶ 19.

Menard argues that whether the display qualified as open and obvious is a question of law. (R. 39 at 6.) While the open and obvious question may and often does present a factual issue, where there is no dispute "'as to the physical nature of the condition,'" the inquiry must be resolved as a matter of law. *Dunn*, 880 F.3d at 906 (quoting *Bruns*, 2014 IL 116998, ¶ 18). "'[W]hether the condition is open and obvious depends not on plaintiff's subjective knowledge but, rather, on the objective knowledge of a reasonable person confronted with the same condition.'" *Id*. at 907 (quoting *Racky v. Belfor USA Grp., Inc.*, 2017 IL App (1st), ¶ 119).

Menard posits that there is no dispute as to the physical nature of the "end cap display." (R. 39 at 6-7.) Menard focuses on facts relating to the obviousness of the display as a whole: (1) the display base was green and black while the floor was gray; (2) the display was "not in the aisle or in anyone's walking path"; (3) Charles saw the display when he was 15 to 20 feet away; (4) Charles could have moved to his right to avoid the display; and (5) Charles had an unobstructed view of the display. (Id. at 7, 9.) Menard argues that under these circumstances, a reasonable person would have appreciated the open and obvious condition and risk associated with walking too closely to the display. (See id. at 8, 11-12.)

Plaintiffs respond that there are "multiple disputed material facts" relating to the condition that caused Charles to trip and fall. (R. 46 at 1, 6.) Plaintiffs

8

assert that Charles was looking ahead while walking, not staring downward, and did not appreciate that the black base trim surrounding the display was raised about 1.5 inches off the ground, thereby creating a tripping hazard. (Id. at 4; see also R. 38, Ex. A; R. 45 ¶¶ 38-40, 58, 62-66.) *See Buchaklian v. Lake Cty. Family Young Men's Christian Ass'n*, 732 N.E.2d 596, 600-01 (Ill. App. Ct. 2000) (declining to require "invitees, as a matter of law . . . to look constantly downward"). Although Charles saw the display from 15 to 20 feet away, he believed that the base trim was flush with the floor. (R. 46 at 2-3; see also R. 38 ¶¶ 29-31, Ex. A; R. 45 ¶¶ 36, 38-40, 58.) Contrary to Menard's assertion that the display did not extend into the aisle, Plaintiffs respond that the trim on which Charles tripped extended beyond the displayed boxes and out into the aisle. (R. 38 ¶¶ 49, 50, 54; R. 45 ¶¶ 25, 62, 53, 65, 66).

Plaintiffs also dispute other facts that they assert are material to the open and obvious inquiry. For example, they argue that the subject display was a "promo flat" and not an "end cap" as Menard contends. (R. 46 at 3 n.2.) Despite Menard's assertion that Charles could have moved to the right to avoid the display base, Kimberly and Rebecca Kemp disagree, testifying that there was not enough room in the aisle. (R. 38, Ex. B at 31-32; R. 43, Rebecca Kemp Dep. at 19.) Menard employees Greg McIlhargie, Krystle Herring, and Garrison testified that they did not believe the rug or trim posed a tripping hazard. (R. 38, Ex. D at 38, Ex. F at 43-44, Ex. G at 78-79.) Conversely, Rebecca Kemp and Wilson, eyewitnesses to Charles's fall, testified that the trim was a tripping hazard. (R. 43 at 18; R. 44,

9

Wilson Dep. at 19.) Rebecca Kemp stated, "This piece on the floor, it's out too far. So I could understand with [Charles] walking his foot would hit that bottom piece that's down there and that's where he tripped." (R. 43 at 17.) Plaintiffs assert that a reasonable person would not be expected to stare downward, especially with other shoppers approaching, to appreciate the hazardous nature of the raised base trim or the risk involved with walking near it. (R. 46 at 5-9.)

Despite semantic distinctions about the type of display, different perspectives on whether Charles could have moved to his right while walking in the aisle, and whether the base trim presented a tripping hazard, the parties do not dispute the physical nature of the condition at issue. The parties instead disagree on which aspects of the display are relevant to the open and obvious inquiry and the extent to which a reasonable person in Charles's position would have recognized the dangerousness of the condition and the risk associated with walking near it. Menard claims that the entire display of boxes placed on contrasting green carpet with black trim in a wide aisle was open and obvious to any reasonable person. Plaintiffs point to the raised black trim extending beyond the displayed boxes and the fact that witnesses perceived the trim to be flush with the floor and, as such, a tripping hazard. Drawing all inferences and construing all facts in Plaintiffs' favor, the court finds that "a reasonable person exercising ordinary perception, intelligence, and judgment" in Charles's position may not have recognized that the black base trim was raised off the floor or that it presented a tripping hazard. *Perez v. Heffron*, 2016 IL App (2d) 160015, ¶ 12.

In so finding, the court is mindful that the open and obvious doctrine is intended to protect landowners where the "nature of the condition itself gives caution and therefore the risk of harm is considered slight." *Dunn*, 880 F.3d at 906 (quoting *Bucheleres*, 665 N.E.2d at 832)). In *Dunn*, 880 F.3d at 907, the Seventh Circuit upheld an open and obvious finding where the evidence allowed for only one conclusion—that a "leaning and unstable stack" of insulation presented such an "open and obvious danger that a reasonable person with [the plaintiff's] knowledge would have appreciated" the risk. *See Scott v. Menard*, No. 16 CV 723, Dkt. 42, at 6-7 (N.D. Ill. Aug. 9, 2017) (finding no disputed issue as to the open and obvious nature of a 48-by-32-inch pallet jack in a Menard aisle).

Cases relied upon by Menard found the same. For example, in *Kleiber*, 942 N.E.2d at 642-43, the plaintiff walked across an empty wooden pallet on the ground in front of a Farm and Fleet store to obtain bags of soil. The plaintiff's foot "went through one of the holes (slats) in the pallet," causing the plaintiff to twist her leg and fall. *Id.* The plaintiff sued for damages, but the court found as a matter of law that there was "no question that the danger posed by the empty pallet was an open and obvious hazard." *See id.* at 648.

Similarly, in *Contreras v. Harvestime Foods, Inc.*, 2017 IL App (1st) 160878-U, ¶ 23, a grocery store customer tripped on the corner of a wooden pallet on which a bin of watermelons had been placed. The customer's "shoe got stuck" on the pallet and she fell, fracturing her left leg and wrist. *Id.* ¶¶ 3, 7. The court rejected the customer's argument that the edges of the bin and pallet should have been aligned,

11

finding that "the protruding wooden pallet" was "readily discover[able] and avoid[able]" because it was "large and conspicuously placed in defendant's store next to similar large bins of fruit," "the rounded-corner of the bin was adorned with a large red and white striped arrow, pointing down to the exposed square-corner of the wooden pallet on which the bin was situated," and "there was nothing in the vicinity of the bin because it was late and the store was empty." *Id.* ¶¶ 23, 24, 26. Accordingly, there was "no question that the risk of tripping over an exposed wooden pallet [was] apparent and would be appreciated by a reasonable person in plaintiff's position." *Id.* ¶ 25. *See also Ochoa v. Menard, Inc.*, No. 16 CV 6922, 2017 WL 4861674, at *3-4 (N.D. Ill. Oct. 27, 2017) (finding open and obvious stocking activity occurring in a Menard aisle, which effectively had been blocked off with flatbed and shopping carts because of the condition of the aisle); *Novak v. LQ Mgmt., LLC*, 2016 IL App (1st) 160429-U, ¶ 27 (finding open and obvious highchair in hotel aisle); *Wilfong*, 930 N.E.2d at 521 (finding open and obvious rut in construction site).

This is not such a case. Unlike in *Kleiber*, 942 N.E.2d at 642-43, Charles did not fall on a large pallet or even on one of the large boxes displayed. (R. 39 at 4.) Nor did Charles recognize the size or height of the trim when he saw the display from 15 to 20 feet away. (R. 45 ¶¶ 36, 40.) *Cf. Kleiber*, 942 N.E.2d at 648-49. Instead, Charles tripped on the raised black base trim that appeared to be flush with the floor. (R. 38 ¶ 30; R. 45 ¶¶ 36, 40.) Thus, the facts of this case are not comparable *Klieber*.

12

The facts in *Contreras*, 2017 IL App (1st) 160878-U, are also distinguishable from the facts of this case, at least the facts the court must accept as true. The boxes in the Menard display where Charles fell were not sitting on top of the black trim but rather on green carpet that "extended into the aisle." (R. 45 ¶ 25; R. 38, Ex. A at 35, Ex. H at 27-28.) End-cap displays to the north of the subject display, in the direction Charles was walking, did not contain similarly large boxes, green carpet, or black trim on the floor. (R. 38, Ex. C.) *Cf. Contreras*, 2017 IL App (1st) 160878-U, ¶ 23. There was no large arrow or other sign pointing to the elevated nature of the black trim. (R. 38, Exs. A & C.) *Cf. Contreras*, 2017 IL App (1st) 160878-U, ¶ 23. And, contrary to the empty nature of the grocery store in *Contreras*, *id.* ¶ 24, there were other shoppers and a cart in the aisle when Charles fell. (R. 38, Ex. C.) Whereas in *Contreras* there was "no question" that a reasonable person would have appreciated the condition of the exposed wooden pallet and risk of tripping on it, *id.* ¶ 25, the same is not true here where all reasonable inferences are drawn in Plaintiffs' favor.

The evidence in this case simply does not allow for only one conclusion as to the openness or obviousness of the impediment on which Charles tripped. Even though the black base trim was different in color from the green carpet or gray floor, the court cannot find as a matter of law that the elevated nature of the trim or its location—extending out from the nearby boxes being displayed—was so conspicuous as to alert a reasonable person of both the condition and risk involved. *See Buchaklian*, 732 N.E.2d at 598, 600-01 (denying summary judgment on open and

13

obvious question where a piece of mat that was raised "an inch or two" higher than the rest of the mat caused the plaintiff to trip because "the condition of the mat was not 'so blatantly obvious and in such [a] position'" that the plaintiff would have discovered it and protected herself against it); *Atchley v. Univ. of Chi. Med. Ctr.*, 2016 IL App (1st) 152481, ¶ 36 (declining to find open and obvious at summary judgment a loading dock condition presenting "a slight height differential, resulting from a broken leveler," which led a pallet jack to get stuck and then a delivery truck driver to injure himself because the court could not conclude as a matter of law that a reasonable person would have appreciated the condition or risk).

Menard acknowledges that there are two exceptions to the open and obvious rule, the distraction exception and the deliberate encounter exception, but argues that neither applies here. (R. 39 at 13-14.) The latter exception clearly does not apply because Plaintiffs had no "economic reason for choosing to encounter the danger," and they do not argue otherwise. *Kleiber*, 942 N.E.2d at 649. As to the distraction exception, the parties dispute whether Plaintiffs have asserted that exception here. (R. 39 at 13; R. 46 at 10-11; R. 52 at 10-13.) Menard argues that Plaintiffs do not and cannot contend that the distraction exception applies because Charles expressly admitted that nothing distracted his attention immediately before or at the time he tripped and fell.[8] (R. 38 ¶¶ 38-39; R. 38, Ex. A at 45:15-20.)

---

[8] Plaintiffs allege that "prior to and on November 30, 2016, defendant MENARD, INC., knew or should have known that customers, like plaintiff CHARLES SEAY, would be distracted by, among other distractions, display advertising, other customers, carrying items for purchase, as they walked in the aisle." (R. 3-1, Compl. ¶ 10.) In response to Menard's LR 56.1 statement, Plaintiffs agreed that

14

For their part, Plaintiffs suggest that while Charles was not distracted from "keeping a proper lookout" ahead as he walked, he "was necessarily 'distracted' from looking down at the trim." (R. 46 at 10-11.) Regardless, because the court has not found that the open and obvious rule applies at summary judgment, the court need not decide whether the distraction exception applies.

**B.     Duty of Care Factors Three and Four**

Menard argues that the remaining duty of care factors—the magnitude of the burden of guarding against the injury and the consequences of imposing that burden on Menard—weigh against imposing a duty. It contends that Plaintiffs attempt to impose too onerous a burden on Menard to guard against known risks and too great a consequence for not doing so. (R. 39 at 12-13.) To prevent the type of fall that occurred here, Menard asserts that it would be forced to station an employee "in every aisle to warn customers of the obvious dangers of walking into, over, or near end cap displays." (Id. at 13.)

In assessing these factors, the court "must consider all financial and other consequences of imposing a duty on the defendant to guard against the injury at issue, and consider the impact of such a duty on all of the defendant's operations." *Scott*, No. 16 CV 723, Dkt. 42, at 14 (citing *Bruns*, 2014 IL 116998, ¶ 37). The court declines to infer that Menard's unsupported assertion is the only possible outcome if a duty of care is found. As the Seventh Circuit found in *Dunn*, 880 F.3d at 910, "less onerous safeguards [other] than continuous surveillance" may be implemented.

---

"Charles was not distracted from where he was looking at the time of the incident: he was looking ahead in the direction where he was walking." (R. 45 ¶¶ 38, 39.)

15

For example, Menard could use trim that is flush with the floor or post a sign giving customers notice of the condition, as the grocer did in *Contreras*, 2017 IL App (1st) 160878-U, ¶ 23. "At trial, the totality of the evidence may point in a different direction, but at summary judgment, the evidence" does not support Menard's assertion that a judgment can be entered as a matter of law against Plaintiffs. *See Allen v. Schneider Logistics, Inc.*, No. 11 CV 7574, 2014 WL 1884318, at *5 (N.D. Ill. May 12, 2014).

## Conclusion

For the foregoing reasons, Menard's motion for summary judgment is denied.

            **ENTER:**

            _____
            **Young B. Kim**
            **United States Magistrate Judge**